J-S06035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SAMUEL REYES, | |
| Appellant | No. 2152 MDA 2014 |

Appeal from the Judgment of Sentence October 24, 2014
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0003159-2012

BEFORE:  PANELLA, J., MUNDY, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED JANUARY 28, 2016**

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Luzerne County following Appellant's conviction by a jury on the charge of possession of a firearm prohibited, 18 Pa.C.S. § 65(a)(1).  On appeal, Appellant contends the trial court erred in denying his motion to suppress the firearm seized by the police, as well as his motion to dismiss pursuant to Pa.R.Crim.P. 600.  We affirm.

The relevant facts and procedural history are as follows:  On May 30, 2012, a criminal complaint was filed against Appellant, and he was released on bail.  On January 18, 2013, Appellant filed a counseled pre-trial motion seeking to suppress the firearm seized by the police, and on March 1, 2013, the trial court conducted a hearing, at which a sole witness, Police Officer Joseph Ziegler, testified.  Specifically, Officer Ziegler testified that, on May

_____
*Former Justice specially assigned to the Superior Court.

29, 2012, at approximately 11:15 p.m., he received a dispatch "for a male in the area of Wood Street that was threatening a female with a firearm." N.T. 3/1/13 at 3. The male was described as "a Hispanic male wearing a black shirt and a black hat." *Id.* at 4. Officer Ziegler arrived at the area within ten or fifteen seconds, and a man riding a bicycle on the street "pointed out [Appellant] as the person he called about." *Id.* at 28. The officer indicated that, when he drove slowly by the man on the bicycle, the man started pointing at Appellant and said, "He's right there, he's right there." *Id.* at 29. Officer Ziegler noted that, prior to the instant incident, he knew the man who was riding the bicycle. *Id.*

The officer drove "maybe 10 feet[ ]" and saw Appellant, who matched the description of the suspect, walking down the middle of the road. *Id.* at 5. Coming within fifteen feet of Appellant, Officer Ziegler stopped his fully-marked patrol car, exited it, and told Appellant to "come towards [the] car, put his hands on the hood." *Id.* at 6. Appellant proceeded towards the front of the police vehicle and, when he was about two feet from the front bumper, he asked the officer, "What?" *Id.* at 7. Officer Ziegler responded, "Wilkes-Barre police, put your hands on the hood of my car." *Id.* At this point, Appellant turned and ran.

Officer Ziegler drew his taser and, after chasing Appellant for just five feet, he noticed Appellant was holding a black semiautomatic pistol in his right hand. At this point, while continuing to chase Appellant, the officer

holstered his taser and drew his firearm.  Throughout this time, Officer Ziegler directed Appellant to "stop and drop the weapon[;]" however, Appellant did not comply.  *Id.* at 9.  Instead, Appellant "hopped a fence" with Officer Ziegler unable to follow.  *Id.* at 10-11.

Other responding officers took Appellant into custody on a nearby street, but Appellant was not in possession of the firearm when he was apprehended.  However, Officer Ziegler discovered the firearm "[j]ust on the other side of the fence that [Appellant] . . . scaled."  *Id.* at 11.  The firearm was loaded.

At the conclusion of the hearing, the trial court denied the suppression motion, and on April 17, 2014, Appellant filed a motion to dismiss under Pa.R.Crim.P. 600.   The trial court took the motion "under advisement," and on July 9, 2014, the trial court denied the motion to dismiss without a hearing.  Thereafter, the case proceeded to a jury trial, and the jury convicted Appellant on the sole offense.

On September 24, 2014, the trial court sentenced Appellant to six years to twelve years in prison; however, on September 30, 2014, the trial court, on its own motion, vacated the sentencing order.  On October 24, 2014, the trial court re-sentenced Appellant to five years to ten years in prison, and on October 30, 2014, Appellant filed a counseled notice of appeal.  The trial court directed Appellant to file a Pa.R.A.P. 1925(b)

statement, Appellant timely complied, and the trial court filed a responsive Opinion.

Appellant's first contention is the trial court erred in denying his motion to suppress the firearm seized by the police. Appellant alleges he was subjected to an investigative detention when Officer Ziegler initially ordered him to "come towards [the] car, put his hands on the hood[,]" N.T. 3/1/13 at 6, and that such seizure occurred without the requisite reasonable suspicion. In this vein, Appellant contends the description of the suspect was "no more than 'a Hispanic male wearing a black shirt and a black hat[,]'" and the officer stopped him merely because he was "a male Hispanic." Appellant's Brief at 7. Further, Appellant suggests there were inconsistencies between the 911 call sheet, which indicated a male was sending threatening text messages to a female, and Officer Ziegler's testimony that the 911 dispatcher told him there was a male threatening a female with a firearm.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

***Commonwealth v. Williams***, 941 A.2d 14, 26-27 (Pa. Super. 2008) (*en banc*) (citations, quotations, and quotation marks omitted).  Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony.  ***See Commonwealth v. Clemens***, 66 A.3d 373, 378 (Pa. Super. 2013).

Under constitutional jurisprudence, there are three categories of interactions between police and a citizen.

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond.  The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest.  Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Fleet***, 114 A.3d 840, 845 (Pa. Super. 2015) (quotation omitted).

Here, assuming, *arguendo*, Appellant is correct in asserting that he was subjected to an "investigative detention" when Officer Ziegler ordered him to "come towards [the] car, put his hands on the hood[,]"  N.T. 3/1/13 at 6, we conclude the detention was supported by the requisite reasonable suspicion.

"To meet the standard of reasonable suspicion, the officer must point to specific and articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion."  ***Commonwealth v. Smith***,

904 A.2d 30, 35 (Pa. Super. 2006) (quotation marks and quotation omitted). In addition, "we must look to the totality of the circumstances to determine whether the officer had reasonable suspicion that criminal activity was afoot." *Id.* at 35-36 (quotation marks and quotation omitted).

> Among the factors to be considered in establishing a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight.
> This standard is very narrow, however, in that it requires a particularized and objective basis for suspecting the particular person stopped of criminal activity.

*Commonwealth v. Ayala*, 791 A.2d 1202, 1208-09 (Pa. Super. 2002) (quotations, quotation marks, and emphasis omitted).

Initially, we note the trial court found credible Officer Ziegler's testimony that he received a dispatch "for a male in the area of Wood Street that was threatening a female with a firearm." N.T. 3/1/13 at 3. *See* Trial Court Opinion filed 2/27/15 at 7. Therefore, although Appellant attempted to discredit Officer Ziegler's testimony with the 911 call sheet, which suggested a male was sending threatening text messages to a female, under our standard of review, we are bound by the trial court's credibility determination with regard thereto. *See Clemens*, *supra*.

Furthermore, contrary to Appellant's argument, Officer Ziegler did not detain Appellant as the suspect merely because he was "a male Hispanic." Appellant's Brief at 7. Rather, as the record reveals, Officer Ziegler testified that, in addition to the sex and race of the suspect, he was provided with a description of the suspect's clothing, including the fact the

suspect was "wearing a black shirt and a black hat[,]" N.T. 3/1/13 at 4, as well as the suspect's location of "Wood Street." *Id.* at 4. Additionally, upon arriving at the location in his marked police cruiser within ten or fifteen seconds of receiving the dispatch, a man on a bicycle, with whom Officer Ziegler was familiar, pointed at Appellant and said, "He's right there, he's right there." *Id.* at 29. The officer then observed Appellant, who matched the description given to him, walking down the middle of the road in the dark. It was at this point that Officer Ziegler stopped his cruiser, exited it, and ordered Appellant to "come towards [the] car, put his hands on the hood." *Id.* at 6.

Based on the totality of the circumstances, we conclude the record supports the conclusion that Officer Ziegler had the requisite reasonable suspicion to conduct an investigatory detention of Appellant. *See Commonwealth v. Walls*, 53 A.3d 889 (Pa. Super. 2012) (holding police officer had reasonable suspicion that criminality was afoot to justify detention of the defendant; officer heard a radio broadcast describing an individual with a gun, officer observed the defendant one-half block away from the location mentioned on the radio, the defendant matched the

description of the suspect, and the defendant fled after seeing officer).

Thus, we find no relief is due on Appellant's first claim.[1]

Appellant's next claim is the trial court erred in failing to grant his motion to dismiss under Pa.R.Crim.P. 600.[2] Specifically, Appellant contends that, under Rule 600, the Commonwealth is required to commence a defendant's trial within 365 days of filing the criminal complaint. However, Appellant asserts that in the case *sub judice* the Commonwealth filed the complaint on May 30, 2012, and he was not brought to trial until August 4, 2014, well beyond the mechanical run date of May 30, 2013. Thus, he suggests the charges should have been dismissed.

> In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is

---

[1] We note Appellant has confined his suppression challenge to his initial encounter with Officer Ziegler, and thus, we likewise limit our analysis thereto.

[2] Effective July 1, 2013, the Supreme Court adopted a new Rule 600 that reflects prevailing case law. **See** Pa.R.Crim.P. 600, Comment. However, inasmuch as the Commonwealth filed the criminal complaint in this case prior to the effective date of the revisions, the former rule guides our review. **See Commonwealth v. Brock**, 61 A.3d 1015, 1016 n.2 (Pa. 2013). Therefore, all references in this decision are to former Rule 600.

> manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa. Super. 2004)

(quotations, quotation marks, and citations omitted).

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters . . . courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Ramos*, 936 A.2d 1097, 1100 (Pa. Super. 2007) (*en banc*) (quotation omitted).

> Rule 600 provides, in pertinent part:

> (A)(3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.
>
> * * *
>
> (B) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

(C) In determining the period for commencement of trial, there shall be excluded therefrom:

* * *

  (3) such period of delay at any stage of the proceedings as results from:

     (a) the unavailability of the defendant or the defendant's attorney;

     (b) any continuance granted at the request of the defendant or the defendant's attorney.

Pa.R.Crim.P. (A)(3), (B), (C)(3)(a), (b).

Here, in analyzing the instant claim, the trial court relevantly stated the following:

First, . . . we start with the mechanical date. Here, the complaint was filed on May 30, 2012. Pursuant to the Rule, the trial in the case was to commence within 365 days from the date on which the complaint was filed, or on May 30, 2013.

The next determination is whether any excludable time exists[.] [Rule 600] allows the [c]ourt to adjust the date for delay caused by the defendant. The record in this case reflects that there was delay caused by [Appellant] on multiple occasions:

**July 3, 2012-July 18, 2012**-request for continuance by [Appellant] (15 days)

**July 18, 2012-July 25, 2012**-request for continuance by [Appellant] (7 days)

**July 25, 2012-August 29, 2012**-request for continuance by [Appellant] (35 days)

**December 18, 2012-March 11, 2013**-request for continuance by [Appellant] (83 days)

**March 11, 2013-June 3, 2013**-request for continuance by [Appellant] (84 days)

**June 3, 2013-July 8, 2013**-request for continuance by [Appellant] (35 days)

**July 8, 2013-October 21, 2013**-request for continuance by [Appellant] (105 days)

**October 21, 2013-March 4, 2014**-request for continuance by [Appellant] (134 days)

**March 4, 2014-June 23, 2014**-request for continuance by [Appellant] (111 days)

**June 23, 2014-August 4, 2014**-request for continuance by [Appellant] (42 days)
   **TOTAL NUMBER OF DAYS  651**
  In reviewing the record and analyzing the entire procedural history[,] . . . this court finds that the adjusted run date is calculated by adding the above delay to the mechanical run date for an adjusted run date of March 12, 2015. (Calculated by adding 651 days to the mechanical run date of May 30, 2013). Trial commenced on August 4, 2014, well within the adjusted run date[.]

Trial Court Opinion filed 2/27/15 at 5-6 (bold added).

As the trial court determined, application of Rule 600 to the instant case was straightforward. We find no error in the trial court's analysis and, therefore, we conclude the trial court did not abuse its discretion in denying Appellant's motion to dismiss under Rule 600. ***See Commonwealth v. Ramos***, 936 A.2d at 1103 ("We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.") (citation omitted)).[3]

---

[3] We note that, in a single paragraph, Appellant summarily contends the trial court erred in denying his Rule 600 motion to dismiss without holding an evidentiary hearing. Appellant's Brief at 13. However, without further development, we find this specific issue to be waived. ***See Commonwealth v. Williams***, 732 A.2d 1167, 1175 (Pa. 1999) (noting that relief is unavailable based upon undeveloped claims for which insufficient argument is presented on appeal).

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/28/2016